## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: TYLENOL (ACETAMINOPHEN) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | § § § § § § § § § | **MDL NO. 2436**<br><br>**2:13-md-02436**<br><br>**HON. LAWRENCE F. STENGEL**<br><br>**JURY TRIAL DEMANDED** |
| *THIS DOCUMENT RELATES TO ALL CASES* | | |

### PLAINTIFFS' MASTER COMPLAINT AND JURY DEMAND

Pursuant to *Case Management Order No. 7* ("CMO-7") the PSC files this *Master Complaint and Jury Demand* as an administrative device to set forth potential claims individual Plaintiffs may assert against Defendants in this litigation.

### I.    PARTIES

#### A.    PLAINTIFFS

1.      Pursuant to CMO-7 this *Master Complaint and Jury Demand* is filed for all Plaintiffs, and if applicable, Plaintiffs' spouses, children, decedents or wards represented by Plaintiffs' counsel who file a *Short Form Complaint* and by operation of CMO-7, all allegations pleaded herein are deemed pleaded in any *Short-Form Complaint.*

2.      Plaintiffs ingested Tylenol containing Acetaminophen and suffered severe injury, including, but not limited to, acute liver failure.

#### B.    DEFENDANTS

3.      Defendant McNeil-PPC, Inc. is, and at all times relevant was, a corporation organized under the laws of the State of New Jersey, with its headquarters and principal place of business at 7050 Camp Hill Rd., Fort Washington, Pennsylvania.

4.      Defendant McNeil Consumer Healthcare is, and at all times relevant was, a division of McNeil-PPC, Inc., with its headquarters and principal place of business at 7050 Camp Hill Rd., Fort Washington, Pennsylvania.

5.      Defendant Johnson & Johnson, Inc. is, and at all times relevant was, a corporation organized under the laws of the State of New Jersey with its headquarters and principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey.

6.      At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

7.      At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

8.      At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, labeling, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third-parties, subsidiaries or related entities, various types of  acetaminophen products which were sold under the trade name that included the name,  Tylenol, whether under such trade names as, for example only, Tylenol Regular Strength, Tylenol Extra Strength, Tylenol Cold, Tylenol Sinus and other products using the Tylenol brand-name.  These products may hereinafter be referred to as the "subject product." All of the products may hereinafter be referred to as

2

"Tylenol" which is intended to include all products of defendants that were sold using the trade name "Tylenol" in any configuration.

## II.    JURISDICTION

9.    Federal subject matter jurisdiction in the constituent actions is based upon 28 U.S.C. § 1332(a), in that in each of the constituent actions there is complete diversity among Plaintiffs and Defendants and the amount in controversy exceeds $150,000.

10.    Defendants have significant contacts with the federal judicial district identified in the *Short Form Complaint* such that they are subject to the personal jurisdiction of the court in said district.

11.    A substantial part of the events and omissions giving rise to Plaintiffs' causes of action occurred in the federal judicial district identified in the *Short Form Complaint.* Pursuant to 28 U.S.C. § 1391(a), venue is proper in said district.

## III.    FACTUAL ALLEGATIONS

### A.    NATURE OF THE CASE

9.    At all times relevant hereto, Defendant McNeil-PPC, Inc. (a wholly owned subsidiary of Johnson and Johnson, Inc.), designed, manufactured, packaged, labeled, marketed and/or distributed the subject product under the trade name "Tylenol."

10.    At all times relevant hereto, Defendant McNeil Consumer Healthcare (a division of McNeil-PPC, Inc.), designed, manufactured, packaged, labeled, marketed and/or distributed the subject product with the trade-name "Tylenol." Hereinafter, McNeil-PPC, Inc. and McNeil Consumer Healthcare will be referred to collectively as "McNeil."

11.    At all times relevant hereto, Tylenol was also promoted and marketed extensively by McNeil's parent company, Johnson & Johnson, Inc.

3

12.     Johnson & Johnson, Inc. and/or McNeil maintain ultimate control and authority over the design, manufacture, packaging, marketing, promotion, distribution, labeling and sale of Tylenol.

13.     All Tylenol products contain the active ingredient "acetaminophen."

14.     Acetaminophen is the leading cause of acute liver failure in the United States.

**B.      THE PLAINTIFFS' USE OF TYLENOL AND THEIR RESULTING INJURIES**

15.     The potential for acetaminophen-induced liver damage and failure have been well documented and well known to the Defendants for many years prior to the incident involving Plaintiffs.

16.     Plaintiffs ingested a Tylenol product containing acetaminophen.

17.     The subject Tylenol product taken by the Plaintiffs, and which were the direct and proximate cause his/her suffering and liver failure, was designed, manufactured, packaged, labeled, marketed, promoted, and placed into the stream of interstate commerce by Defendants.

18.     As a direct and proximate result of the acts and omissions of Defendants, and Plaintiffs' use of Tylenol, Plaintiffs have suffered death, serious permanent physical injury, life-changing, life-altering pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital, surgical and funeral expenses and other expenses related to diagnosis and treatment thereof, for which Defendants are liable. As a direct and proximate result of Plaintiffs use of Tylenol, Plaintiffs have suffered and will continue to suffer pecuniary and other losses.

19.     As a direct and proximate result of the acts and omissions of Defendants, and Plaintiffs' use of Tyleno and their resulting injuries, Plaintiffs have suffered damages and harm, including but not limited to, emotional distress. Plaintiffs have incurred other medical expenses

4

and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort.

20.     As a direct and proximate result of the acts and omissions of Defendants, and Plaintiffs' use of Tylenol, Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish, and have been deprived of their ordinary pursuits and enjoyments of life. Plaintiffs' spouses have lost, presently and in the future, their spouse's companionship, services, society and the ability of Plaintiffs' spouses in said respect has been impaired and depreciated, and the marital association between husband and wife has been altered, and as such, the Plaintiffs' spouses have been caused mental anguish and suffering.

21.     To the extent that the law of another forum is applied to any aspect of the case, Plaintiffs incorporate by reference that law and make any and all claims that may be available under the law.

22.     The Defendants are joint tortfeasors, jointly and severally liable to Plaintiffs for his/her injuries.

C.     **FEDERAL STANDARDS AND REQUIREMENTS**

23.     Upon information and belief, the Defendants have or may have failed to comply with all federal standards and requirements applicable to the sale of their product, Tylenol, including, but not limited to, violations of various sections and subsections of the United States Code and the Code of Federal Regulations.

IV.   **CLAIMS FOR RELIEF**

**COUNT I**
**STRICT LIABILITY**

24.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

25.     At the time of Plaintiffs' injuries, Defendants' drug, Tylenol, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiffs.

26.     The Tylenol ingested by Plaintiffs was in the same or substantially similar condition as it was when it left the possession of Defendants.

27.     Plaintiffs did not materially alter the Tylenol product he/she ingested.

28.     Defendants are strictly liable for Plaintiffs' injuries in the following ways:

a.     Tylenol, as designed, manufactured, sold and supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b.     Defendants failed to properly market, design, manufacture, distribute, supply and sell Tylenol;

c.     Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy;

d.     Defendants failed to warn, properly label, and place adequate warnings and instructions on Tylenol;

d.     Defendants failed to adequately test Tylenol;

6

e.      Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of Tylenol; and,

f.      Defendants failed to market a feasible alternative design that existed that was capable of preventing Plaintiffs' injuries.

29.      Defendants' actions and omissions were the direct and proximate cause of Plaintiffs' injuries.

30.      Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiffs, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct which was wanton and willful warrants an award of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

31.      Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

7

32.     At the time Defendants marketed, distributed and sold Tylenol to Plaintiffs, Defendants warranted that Tylenol was merchantable and fit for the ordinary purposes for which it was intended.

33.     Members of the consuming public, including consumers such as Plaintiffs, were intended third-party beneficiaries of the warranty.

34.     Tylenol was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described herein.

35.     Plaintiffs reasonably relied on Defendants' representations that Tylenol was safe and free of defects and was a safe means of reducing pain.

36.     Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiffs' injury.

37.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiffs, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

8

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

38.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

39.     Defendants manufactured, supplied and sold Tylenol with an implied warranty that it was fit for the particular purpose of a safe means of reducing pain.

40.     Members of the consuming public, including Plaintiffs, were the intended third-party beneficiaries of the warranty.

41.     Tylenol was not fit for the particular purpose as a safe means of reducing pain without serious risk of personal injury, which risk is much higher than other medications for reducing pain.

42.     Plaintiff reasonably relied on Defendants' representations that Tylenol was safe and effective for reducing pain.

43.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiffs' injuries.

44.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiffs, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

9

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IV
## NEGLIGENT FAILURE TO WARN

45.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

46.     Before Plaintiffs ingested Tylenol, and during the period in which he or she ingested the medication, Defendants knew or had reason to know that Tylenol was dangerous and created an unreasonable risk of bodily harm to consumers.

47.     Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made Tylenol likely to be dangerous.

48.     Despite the fact that Defendants knew or had reason to know that Tylenol was dangerous, Defendants failed to exercise reasonable care in warning the medical community and consumers, including Plaintiffs, of the dangerous conditions and facts that made Tylenol likely to be dangerous.

49.     Defendants failed to warn adequately and properly, but instead, over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

50.     Plaintiffs' injuries were the direct and proximate result of Defendants' failure to warn of the dangers of Tylenol.

51.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of consumers and users of their products, including Plaintiffs, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT V
### NEGLIGENT DESIGN DEFECT

52.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

53.     Defendants are the manufacturer, seller, distributor, marketer, and supplier of Tylenol which was negligently designed.

54.     Defendants failed to exercise reasonable care in designing, developing, formulating, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, and promoting Tylenol which was defective and presented an unreasonable risk of harm to consumers, such as Plaintiffs.

55.     As a result, Tylenol contains defects in its design which renders it dangerous to consumers, such as Plaintiffs, when used as intended or as reasonably foreseeable to Defendants. The design defects render Tylenol more dangerous than other pain relievers and cause an unreasonable increased risk of injury including but not limited to acute liver failure.

11

56. Plaintiffs ingested Tylenol in a reasonably foreseeable manner, and substantially as intended by Defendants.

57. Tylenol was not materially altered or modified after manufactured by Defendants and before ingested by Plaintiff.

58. The design defects directly rendered Tylenol defective and were the direct and proximate result of Defendants' negligence and failure to use reasonable care in designing, testing, and manufacturing Tylenol.

59. As a direct and proximate result of Defendants' negligent design of Tylenol, Plaintiffs suffered injury.

60. Despite the fact that Defendants knew or should have known that Tylenol was defectively designed, contained design defects, and caused an unreasonable risk of harm, Defendants designed, manufactured, sold, and marketed Tylenol to consumers, including the medical community and Plaintiffs, and failed to warn consumers, the medical community, and Plaintiffs of the increased risk of harm relative to other medications for relieving pain.

61. Defendants' conduct was extreme and outrageous. Defendants risked the lives of consumers and users of their products, including Plaintiffs, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

12

## COUNT VI
## NEGLIGENCE

62.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

63.     Defendants had a duty to exercise reasonable care in the manufacture, labeling, sale and distribution of Tylenol, including a duty to assure that the product did not cause unreasonable, dangerous side-effects to users.

64.     Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of Tylenol, in that Defendants knew or should have known that the drugs created a high risk of unreasonable harm.

65.     Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of Tylenol in that, among other things, they:

        a.      Failed to use due care in designing and manufacturing Tylenol so as to avoid the aforementioned risks to individuals;

        b.      Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects. The warnings given did not accurately reflect the symptoms, scope or severity of the side-effects;

        c.      Failed to provide adequate training and instruction to medical care providers for the appropriate use of Tylenol;

        d.      Failed to properly market, design, manufacture, distribute, supply and sell Tylenol;

13

e.    Over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy;

f.    Placed an unsafe product into the stream of commerce; and,

g.    Were otherwise careless or negligent.

66.    Despite the fact that Defendants knew or should have known that Tylenol caused unreasonable, dangerous side-effects which many users would be unable to remedy by any means, Defendants continued to market Tylenol to consumers, including the medical community and Plaintiffs.

67.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiffs, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

68.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

14

69.     Prior to Plaintiffs' first dose of Tylenol and during the period in which she ingested Tylenol, Defendants misrepresented that Tylenol was a safe and effective means of relieving pain.

70.     Defendants also failed to disclose material facts regarding the safety and efficacy of Tylenol, including information regarding increased adverse events and harmful side-effects.

71.     Defendants had a duty to provide Plaintiffs, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold, and contrary to this duty, Defendants, among other actions, over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

72.     Defendants knew or should have known, based on prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with Tylenol that their representations regarding Tylenol were false, and that they had a duty to disclose the dangers of Tylenol.

73.     Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiffs, to act in reliance by purchasing Tylenol.

74.     Plaintiffs justifiably relied on Defendants' representations and nondisclosures by purchasing and ingesting Tylenol.

75.     Defendants' misrepresentations and omissions regarding the safety and efficacy of Tylenol was the direct and proximate cause of Plaintiffs' injuries.

76.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiffs, with knowledge of the safety and efficacy problems and suppressed this knowledge from the

general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VIII
## BREACH OF EXPRESS WARRANTY

77.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State

78.     Defendants expressly warranted that Tylenol was safe and effective to members of the consuming public, including Plaintiffs.

79.     Members of the consuming public, including consumers such as Plaintiffs, were intended third-party beneficiaries of the warranty.

80.     Defendants marketed, promoted and sold Tylenol as a safe product.

81.     Tylenol does not conform to these express representations because it is not safe and has serious side-effects, including acute liver failure.

82.     Defendants breached their express warranty in one or more of the following ways:

a.     Tylenol as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

16

b.      Defendants failed to warn and/or place adequate warnings and instructions on Tylenol;

c.      Defendants failed to adequately test Tylenol; and,

d.      Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from Tylenol, and instead, Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

83.      Plaintiffs reasonably relied upon Defendants' warranty that Tylenol was safe and effective when she purchased and ingested the medication.

84.      Plaintiffs' injuries were the direct and proximate result of Defendants' breach of their express warranty.

85.      Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IX
## FRAUD

86.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

87.     Prior to Plaintiffs' ingestion of Tylenol and during the period in which Plaintiffs actually ingested Tylenol, Defendants fraudulently suppressed material information regarding the safety and efficacy of Tylenol, including information regarding potential liver failure. Furthermore, Defendants fraudulently concealed the safety information about the use of acetaminophen. As described above, acetaminophen has several well known serious side-effects that are not seen in other forms of pain relievers. Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of Tylenol.

88.     Defendants fraudulently concealed the safety issues associated with Tylenol in order to induce physicians to recommend its use to patients, including the Plaintiffs.

89.     At the time Defendants concealed the fact that Tylenol was not safe, Defendants were under a duty to communicate this information to Plaintiffs, physicians, the FDA, the healthcare community, and the general public in such a manner that they could appreciate the risks associated with using Tylenol.

90.     Defendants, at all times relevant hereto, withheld information from the FDA which they were required to report. Plaintiffs and prescribing physicians relied upon the Defendants' outrageous untruths regarding the safety of Tylenol.

91.     Plaintiffs and physicians were not provided with the necessary information by the Defendants, to provide an adequate warning to the Plaintiffs; instead Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

92.     Tylenol was improperly marketed to Plaintiffs and physicians as the Defendants did not provide proper instructions about how to use the medication and did not adequately warn about the medications' risks; instead Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

93.     As a direct and proximate result of Defendants' malicious and intentional concealment of material life-altering information from Plaintiff sand Plaintiff s' physicians, Defendants caused or contributed to Plaintiffs' injuries.

94.     It is unconscionable and outrageous that Defendants would risk the lives of consumers, including Plaintiffs. Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public about the dangers associated with the use of Tylenol. Defendants' outrageous conduct rises to the level necessary that Plaintiffs should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

95.     Defendants widely advertised and promoted Tylenol as a safe and effective medication and/or as a safe and effective means of reducing pain.

96.     Defendants had a duty to disclose material information about serious side-effects to consumers such as Plaintiffs.

97.     Additionally, by virtue of Defendants' partial disclosures about the medication, in which Defendants touted Tylenol as a safe and effective medication, Defendants had a duty to

disclose all facts about the risks associated with use of the medication, including the risks described in this complaint. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

98.     Had Plaintiffs been aware of the hazards associated with Tylenol, Plaintiffs would not have ingested the product that led proximately to Plaintiffs' adverse health effects, including their acute liver failure.

99.     Defendants' advertisements regarding Tylenol made material misrepresentations to the effect that Tylenol was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiffs, to purchase such product. Plaintiffs relied on these material misrepresentations when deciding to purchase and ingest Tylenol.

100.    Upon information and belief, Plaintiffs avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with Tylenol with the purpose of preventing consumers, such as Plaintiffs, from discovering these hazards.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT X
## VIOLATION OF CONSUMER PROTECTION LAWS

101.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and*

*Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

102.    Plaintiffs purchased and used Tylenol primarily for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

103.    Unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

> a)    Representing that goods or services have characteristics, ingredients, user benefits, or quantities that they do not have;
>
> b)    Advertising goods or services with the intent not to sell them as advertised;
>
> c)    Over-promotion of the Tylenol products, including but not limited to over-promotion of its safety and efficacy; and
>
> d)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

104.    Defendants violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of Tylenol.

105.    Defendants uniformly communicated the purported benefits of Tylenol while failing to disclose the serious and dangerous side-effects related to the use of Tylenol and of the true state of Tylenol's regulatory status, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiffs in the marketing and advertising campaign described herein. Defendants' conduct in connection with Tylenol was also impermissible and illegal in that it

created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Tylenol.

106.    As a result of these violations of consumer protection laws, Plaintiffs  has incurred serious physical injury, pain, suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital and surgical expenses and other expense related to the diagnosis and treatment thereof, for which Defendants are liable.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XI
## FRAUDULENT CONCEALMENT

107.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State

108.    Prior to Plaintiffs' use of Tylenol and during the period in which Plaintiffs actually used Tylenol, Defendants fraudulently suppressed material information regarding the safety and efficacy of Tylenol and the availability of an alternative feasible safer design, including but not limited to, information regarding a safe therapeutic dose for the use of Tylenol and the small margin of safety between the dose recommended by Defendants and a dose that was unsafe.  Furthermore, Defendants fraudulently concealed the safety information about the use of Tylenol and Acetaminophen generally. Plaintiffs believe the fraudulent misrepresentations

22

and fraudulent concealment described throughout this Master Complaint was intentional so as to maintain the sales volume of Tylenol and Acetaminophen generally, strong, particularly in the face of new competition from other over the counter pain relievers.

109. Defendants intentionally concealed safety issues with Tylenol and Acetaminophen generally in order to induce physicians to recommend to patients, including Plaintiffs, to purchase and use Tylenol.

110. At the time Defendants concealed the fact that Tylenol and Acetaminophen generally was not safe as designed and marketed by Defendants, Defendants were under a duty to communicate this information to physicians, the FDA, the healthcare community, and the general public in such a manner that they would appreciate the risks associated with using Tylenol and Acetaminophen, generally. Instead, Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

111. Plaintiffs relied upon the Defendants' false and fraudulent misrepresentations and concealments regarding the safety, and dosing for the use of Tylenol.

112. As a direct and proximate cause of Defendants' malicious and intentional concealment of material and information, Defendants caused or significantly contributed to Plaintiffs' injuries.

113. It is unconscionable and outrageous that Defendants would risk the lives of consumers. Despite this knowledge, the Defendants made conscious decisions not to redesign, properly label, warn or inform the unsuspecting and consuming public. Defendants' outrageous conduct rises to the level that is appropriate that entitles Plaintiffs to an award of punitive damages to deter Defendants from this type of outrageous conduct in the future and to

discourage Defendants from placing profits above the safety of patients in the United States of America.

114.    Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of Tylenol as described herein, and Defendants did not disclose this information to the Plaintiff, doctors generally, the healthcare community and the general public. Without full knowledge of the dangers of Tylenol and Acetaminophen generally, Plaintiff could not evaluate whether a person who was injured by Tylenol had a valid claim.

115.    Because of Defendants' concealment of the true character, quality and nature of their Tylenol products, Defendants are estopped from relying on any statute of limitations defense.

116.    Defendants furthered this fraudulent concealment through a continued and systematic failure to disclose information to Plaintiffs, the medical community and the public.

117.    Defendants' acts before, during and/or after the act causing Plaintiffs' injury prevented Plaintiffs from discovering the injury or cause thereof.

118.    Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendants must have realized was dangerous, needless and reckless, without regard to the consequences or the rights and safety of Plaintiffs.

119.    Defendants' conduct, as described in the preceding paragraphs, also amounts to a continuing tort, and continues up through and including the date of the filing of Plaintiffs' Complaint.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages,

punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XII
## LOSS OF CONSORTIUM

120.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

121.    At all relevant times hereto, Plaintiffs had spouses (hereafter referred to as "Spouse Plaintiffs") and/or family members (hereafter referred to as "Family Member Plaintiffs") who have suffered injuries and losses as a result of the Tylenol and Plaintiffs' injuries.

122.    For the reasons set forth herein, Spouse Plaintiffs and/or Family Member Plaintiffs have necessarily paid and have become liable to pay for medical aid, treatment, monitoring, medications, and other expenditures and will necessarily incur further expenses of a similar nature in the future as a proximate result of Defendants' misconduct.

123.    For the reasons set forth herein, Spouse Plaintiffs and/or Family Member Plaintiffs have suffered and will continue to suffer the loss of their loved one's support, companionship, services, society, love and affection.

124.    For all Spouse Plaintiffs, Plaintiffs allege that their marital relationship was impaired and depreciated, and the marital association between husband and wife has been altered.

125.    Spouse Plaintiffs and/or Family Member Plaintiffs have suffered great emotional pain and mental anguish.

25

126.   As a direct and proximate result of Defendants' wrongful conduct, Spouse Plaintiffs, Family Member Plaintiffs, and/or intimate partners of the aforesaid Plaintiffs, have sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to

127.   Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners jointly and severally for all general, special and equitable relief to which Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners are entitled by law.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XIII
## PUNITIVE DAMAGES

128.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

129.   Defendants sold their Tylenol to and other consumers throughout the United States without doing adequate testing to ensure that Tylenol was reasonably safe for its intended use.

130.   Defendants sold the Tylenol to Plaintiffs' and other consumers throughout the United States in spite of their knowledge that Tylenol and cause the other problems heretofore

set forth in this *Master Complaint*, thereby causing severe and debilitating injuries suffered by the Plaintiffs.

131.    At all times relevant hereto, Defendants knew or should have known that their Tylenol products were inherently dangerous with respect risk of acute liver failure and the small margin of safety between the dose recommended by Defendants and a dose that was unsafe, loss of life's enjoyment, an effort to cure the conditions proximately related to the use of the product, as well as other severe and personal injuries which are permanent and lasting in nature.

132.    At all times material hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of the Defendants' Tylenol including but not limited to information regarding a safe therapeutic dose for the use of Tylenol and the small margin of safety between the dose recommended by Defendants and a dose that was unsafe.

133.    Defendants' misrepresentations included knowingly withholding material information from the consumers including Plaintiffs and the medical community, concerning the safety and efficacy of the Defendants' Tylenol.

134.    At all times material hereto, Defendants knew and intentionally and/or recklessly disregarded the fact that the Defendants' Tylenol causes debilitating and potentially lethal side effects with greater frequency than safer alternative products.

135.    At all times material hereto, Defendants knew and intentionally and/or recklessly disregarded the fact that the Defendants' Tylenol cause debilitating and potentially lethal side effects with greater frequency than safer alternative products and recklessly failed to advise healthcare providers, the public and the FDA of same.

136.   At all times material hereto, Defendants intentionally misstated and misrepresented data and continue to misrepresent data so as to minimize the true and accurate risk of injuries and complications caused by the Defendants' Tylenol.

137.   Notwithstanding the foregoing, Defendants continue to aggressively market the Defendants' Tylenol to consumers and the medical community, without disclosing the true risk of side effects.

138.   Defendants knew of the Defendants' Tylenol was defective and unreasonably dangerous nature, but continued to manufacture, produce, assemble, market, distribute, and sell the Defendants' Tylenol so as to maximize sales and profits at  the expense of the health and safety of the Public, including Plaintiffs, in conscious and/or reckless disregard of the foreseeable harm caused by the Defendants' Tylenol.

139.   Defendants continue to intentionally conceal and/or recklessly and/or grossly negligently fail to disclose to the public, including Plaintiffs, the serious side effects of the Defendants' Tylenol in order to ensure continued and increased sales.

140.   Defendants' intentionally, reckless and/or grossly negligent failure to disclose information deprived Plaintiffs of necessary information to enable them to weigh the true risks of using the Defendants' Tylenol against their benefits.

141.   As a direct and proximate result of the foregoing acts and omissions, Plaintiffs have required and will require health care and services, and have incurred medical, health care, incidental, and related expenses. Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical care and/or hospital care and medical services.

142.    Defendants have engaged in conduct entitling Plaintiffs to an award of punitive damages pursuant Common Law principles and the statutory provisions of the Plaintiffs' respective states.

143.    Defendants' conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, punitive damages, and such further relief as the Court deems equitable and just.

**COUNT XIV**
**DISCOVERY RULE AND TOLLING**

144.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State

145.    Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, class action tolling, delayed discovery, discovery rule, and fraudulent concealment.

146.    Plaintiffs plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiffs had been injured, the cause of the injury, and the tortious nature of the wrongdoing that caused the injury.

147.    Despite diligent investigation by Plaintiffs into the cause of their injuries the nature of Plaintiffs' injuries and damages, and their relationship to Tylenol was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period.

148.    The running of the statute of limitations in this cause is tolled due to equitable tolling. Defendant(s) are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiffs and/or Plaintiffs' physicians of the true risks associated with the Products.  As a result of the Defendants' fraudulent concealment, Plaintiffs and/or Plaintiffs' physicians were unaware, and could not have known or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendant(s).

## COUNT XV
## WRONGFUL DEATH

149.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State

150.    Plaintiffs Decedents' spouse, beneficiary and0or lawful representative of Decedents' Estate brings this claim on behalf of himself or herself and as the Decedents' lawful beneficiary.  The Decedents' lawful beneficiaries include the Decedents' beneficiaries

151. As a direct and proximate result of the conduct of the Defendants and the defective nature of Tylenol as outlined above, Decedents suffered bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses for hospitalization, medical and nursing treatment, loss of earnings, loss of ability to earn, funeral expenses and death.

152. As a direct and proximate cause of the conduct of Defendants, Decedents' beneficiaries have incurred hospital, nursing and medical expenses, and estate administration expenses as a result of Decedents' deaths. Plaintiffs, Administrators of Decedents' estates, bring this claim on behalf of Decedents' lawful beneficiaries for these damages and for all pecuniary losses sustained by said beneficiaries pursuant to any and all relevant statutes.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, damages for wrongful death, together with interest, costs of suit, attorneys' fees, punitive damages, and such further relief as the Court deems equitable and just.

## COUNT XVI
## SURVIVAL ACTION

153. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this *Master Complaint and Jury Demand* in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the Plaintiffs' resident State.

154. As a direct and proximate result of the conduct of Defendants, Decedents, prior to their deaths, were obligated to spend various sums of money to treat their injuries, which debts have been assumed by their estates. As a direct and proximate cause of the aforesaid, Decedents were caused pain and suffering, mental anguish and impairment of the enjoyment of

life, until the date of their deaths; and, as a direct and proximate result of the aforesaid, Decedents suffered a loss of earnings and earning capacity. Plaintiffs' spouses, as Administrators of the Estates of Decedents, bring this claim on behalf of the estates for damages under any and all applicable statute or common law.

155.    As a direct and proximate result of the conduct of Defendants, Decedents and their spouses, until the time of Decedents' deaths, suffered a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder. This claim is brought on behalf of the Estates of the Decedents pursuant to any and all applicable statutes or common law.

156.    As a direct and proximate result of the conduct of Defendants, and including the observances of the suffering of the Decedents, until the date of their deaths, Plaintiffs suffered permanent and ongoing psychological damage.

157.    As a direct and proximate result of the aforesaid, and including the observance of the suffering and physical deterioration of Decedents until the date of their deaths, Plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and medical treatment.  Plaintiffs' spouses, as Administrators of the Estates of the Decedents, brings the claim on behalf of the Estates for damages any and all applicable statutes or common law and in their own right.

158.    Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of the Plaintiffs and the public.

159.    As a result of the Defendants' conduct, the Plaintiffs suffered the injuries and damages specified herein.

160.     Accordingly, the Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, punitive damages, and such further relief as the Court deems equitable and just.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

1.     Compensatory damages in excess of the jurisdictional amount, including but not limited to, non-economic damages in excess of $150,000.00.

2.     Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.     Pain and suffering;

4.     Damages for wrongful death;

5.     Damages for survival;

6.     Damages for Loss of Consortium

7.     Non-economic damages for an increased risk of future complications as a direct result of Plaintiff's injuries;

8.     Punitive damages;

9.     Prejudgment interest at the highest lawful rate allowed by law;

10.     Interest on the judgment at the highest legal rate from the date of judgment until collected;

11.     Attorneys' fees, expenses, and costs of this action; and,

12.     Such further relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

  /s/ Michael Weinkowitz
Arnold Levin, Esquire
Laurence S. Berman, Esquire
Fred S. Longer, Esquire
Michael M. Weinkowitz, Esquire
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut St., Suite 500
Philadelphia, PA  19106
215-592-1500
215-592-4663 (facsimile)
ALevin@lfsblaw.com
LBerman@lfsblaw.com
FLonger@lfsblaw.com
MWeinkowitz@lfsblaw.com

R. Clay Milling, Esquire
HENRY SPIEGEL MILLING LLP
Atlanta Plaza, Suite 2450
950 East Paces Ferry Road, N.E.
Atlanta, GA  30326
(404) 832-8000
(404) 832-8050 (facsimile)
RCM@HSM-LAW.COM

Chris Seeger, Esquire
David Buchanan, Esquire
SEEGER WEISS, LLP
77 Water Street
New York, NY  10005
(212) 584-0700
(212) 584-0799 (facsimile)
CSeeger@seegerweiss.com

James F. Green, Esquire
Chris Tisi, Esquire
Michelle Parfitt, Esquire
ASHCRAFT & GEREL, LLP
SUITE 400

2000 "L" St., N.W.
Washington, D.C.20036
(202) 783-6400
(202)416-6392
(facsimile)jgreen@ashcraftlaw.com

Leonard Davis, Esquire
Russ Herman, Esquire
Steve Herman, Esquire
HERMAN, HERMAN, KATZ & COTLAR LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
(504) 581-4892
(504) 561-6024 (facsimile)
LDavis@HHKC.com

Gil Gainer, Esquire
TOLIVER & GAINER
942 Green St SW
Conyers, GA 30012
(770) 929-3100
(770) 785-7879 (facsimile)
Gainer@toliverandgainer.com

Dianne Nast, Esquire
NASTLAW
1101 Market Street
Suite 2801
Philadelphia, Pennsylvania19107
(215) 923-9300
(215) 923-9302 (facsimile)
DNast@nastlaw.com