IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

IN RE:                         : MDL NO. 13-2436
                               :
                               :
                               :
                               :
                               :
                               :
                               :
                               :
                               :
                               :
TYLENOL (ACETAMINOPHEN)        :
MARKETING, SALES PRACTICE      : Philadelphia, Pennsylvania
AND PRODUCTS LIABILITY         : May 20, 2014
LITIGATION                     : 10:18 a.m.

- - -

TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
BEFORE THE HONORABLE LAWRENCE F. STENGEL
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiffs:    LAURENCE S. BERMAN, ESQUIRE
                       MICHAEL M. WEINKOWITZ, ESQUIRE
                       Levin, Fishbein, Sedran & Berman
                       510 Walnut Street
                       Suite 500
                       Philadelphia, PA  19106


                       R. CLAY MILLING, ESQUIRE
                       Henry, Spiegel & Milling
                       950 East Paces Ferry Road
                       Suite 2450
                       Atlanta, GA  30326


                       GILBERT GAYNOR, ESQUIRE
                       Gilbert Gaynor Attorney At Law
                       820 Arguello Road
                       Santa Barbara, CA  93103


*Transcribers Limited*
*17 Rickland Drive*
*Sewell, NJ 08080*
*856-589-6100 · 856-589-9005*

2

APPEARANCES:              (Continued)

For the Defendants:    CHRISTY D. JONES, ESQUIRE
                       ALYSON JONES, ESQUIRE
                       Butler, Snow, O'Mara,
                       Stevens & Cannada, PDLP
                       1020 Highland Colony Parkway
                       Ridgeland, MS   39157


                       MADELINE M. SHERRY, ESQUIRE
                       Gibson, P.A.
                       1700 Two Logan Square
                       18th and Arch Streets
                       Philadelphia, PA   19103


                       DAVID ABERNETHY, ESQUIRE
                       Drinker, Biddle & Reath, LLP
                       One Logan Square
                       Suite 2000
                       Philadelphia, PA   19103


                       BRANDON L. GOODMAN, ESQUIRE
                       Goodell Devries Leech & Dann, LLP
                       One Commerce Square
                       2005 Market Street
                       Suite 1940
                       Philadelphia, PA   19103


Telephone Participants:

                       DAVID BUCHANAN, ESQUIRE
                       (No Appearance Provided)

                           - - -

Audio Operator:        Laura Buenzle

Transcribed By:        Brad Anders

                           - - -

       Proceedings recorded by electronic sound
recording; transcript produced by computer-aided
transcription service.

                           - - -

1          (The following was heard in open court at

2    10:18 a.m.)

3          THE COURT:  Good morning.

4          ALL:  Good morning, Your Honor.

5          THE COURT:  Please be seated.  We have a full

6    agenda today for our case management conference.  Thank

7    you for your cooperative efforts in putting this agenda

8    together.

9          I want to just note for our record who is

10   present.  Lawrence Berman, Clay Millig and Gill Gaynor,

11   good morning, for the plaintiffs' steering committee.

12   Christy Jones, Allison Jones, good morning.  David

13   Abernathy and Margaret O'Neil, right?  I always do

14   that, don't I?  Madeline Sherry, good morning.  Stephen

15   Finley and Brandon Goodman, right?

16         ALL:  Good morning, Your Honor.

17         THE COURT:  And is David Buchanan available

18   on telephone or are we calling him later?

19         MR. BERMAN:  He should be listening at this

20   point, Your Honor.

21         THE COURT:  Okay.

22         MR. BERMAN:  And then when the hearing

23   concludes to move onto the other issue we've arranged

24   for a new call in and Mr. Buchanan will be on that line

25   and Mr. Weinkowitz is expected to be on that line as

4

1    well.

2            THE COURT:   Perfect.   So, Mr. Buchanan is on

3    the line now?

4            MR. BERMAN:   He should be, yes, Your Honor.

5            THE COURT:   Okay.   And is Mr. Weinkowitz on

6    the line as well?

7            MR. BERMAN:   He is, Your Honor, yes.

8            THE COURT:   Okay.   Very good.   Okay.

9            MR. BERMAN:   Of course, they are in listen

10   only mode at this point.

11           THE COURT:   Okay.   Very well.

12           MR. BERMAN:   Thank you.

13           THE COURT:   I think it makes sense for us to

14   address the first item on the agenda last.   So, we will

15   begin with item number two, which is the plaintiffs'

16   steering committee letter seeking substitution of a

17   case.   Actually one of the Bellwether cases, right?

18   Good morning, Mr. Gaynor.

19           MR. GAYNOR:   Good morning, Judge.   Nice to be

20   with you this morning.   Your Honor, quite simply at the

21   outset of the Bellwether selection by the plaintiffs'

22   steering committee I made an error in identifying one

23   of those cases.   The cases which the committee had

24   selected were the Hague (ph) case, the Spiel (ph) case

25   and the Hayes case.   What was communicated was the

1   Blake case, the Spiel case and the Hague case.

2        When this error came to light I did contact

3   Mr. Hughes and just to put this in context, and Mr.

4   Hughes was very understanding, in fact, he had some

5   very kind things to say to me which I appreciated.

6        Shortly before the date that we were to

7   identify the Bellwether cases my mother had a stroke

8   and it was a serious one.  87 years of age and has had

9   dimensia for a couple of years.  So, it was a major

10   setback for us.

11        With the Tylenol work, other obligations and

12   that basically not only filled my plate, but my plate

13   was a bit overflowing.  Mr. Hughes was very

14   understanding and directed me to Ms. Jones, Ms. Allison

15   Jones, as she was more in charge of the Bellwether

16   selection than he, and offered to pass along what I had

17   told to him.

18        So, similarly the next day I did contact Ms.

19   Jones.  She, likewise, was very courteous and very

20   understanding.  That said, she obviously had to speak

21   with her clients and I understood as well that she

22   would have to do as her clients directed and as they

23   thought best.

24        So, a couple days following that the

25   objection was filed to our replacement.  So, I want to

6

1   go over essentially the substance of those positions.

2   Your Honor, the first thing is that it was an

3   inadvertent error.  It was a mistake on my part.

4        It was brought to the attention, if you will,

5   of the defendants at a point very, very early, almost

6   pre-discovery if you will.  There was a reference in

7   their letter that they had employed a vendor to obtain

8   records of those cases identified in the Bellwether

9   selection process.

10        But, clearly too as was appropriate for them

11   to do, they had already employed the vendor and

12   obtained the records, begun review of the records and

13   so forth in order for them to make their own selections

14   of the Bellwether cases.

15        And according to, I think it is item four in

16   our agenda, they had obtained roughly 80 records prior

17   to our identification of the Bellwether cases.  Whether

18   Blake was among those or not is really not important,

19   it is just to say that that process was begun well

20   before April 8th.

21        Secondly, the Blake case, to the extent that

22   time and effort and energy have been expended to obtain

23   those records, it is not a waste.  That case very well

24   could come up in this process.

25        It is not a case to be dismissed by any

1    means, and so we would submit that those efforts, to

2    the extent they took place before identification were

3    not wasted efforts.

4         To that end as well, Your Honor, no

5    depositions have yet been taken of the Bellwether

6    plaintiffs.  The letter did reference, that is, the

7    letter from Ms. Jones, Ms. Christy Jones, that at that

8    point they had not received dates.

9         But, again, a lot is going on and I am quite

10   sure it was an inadvertent oversight on her part that

11   earlier in the day we had, in fact, provided multiple

12   dates for four of the six plaintiffs.  All three of

13   those identified by the PSC, one of the plaintiffs

14   identified by the defense.

15        The fifth, or I will say selection number two

16   of the defendants, it was communicated to Ms. Davidson

17   is that plaintiff, very elderly, very poor health,

18   wheelchair bound and was not going to be available this

19   month or June, but perhaps later, but not at the

20   present.

21        We also communicated that on the sixth case,

22   and that was Mr. and Ms. Burton, which was another

23   defense selection.  While we hadn't obtained the dates

24   at that point we felt we would soon and, in fact, we

25   did.  And the next day on the 16th we provided those

8

1   dates.

2         So, five of the six plaintiffs dates have

3   been provided but, however, those depositions have not

4   yet been taken.  Again, we would submit that that all

5   demonstrates clearly that there is not significant harm

6   as a result of what was my mistake.

7         The letter also referenced that the Blake

8   case was filed outside the statute of limitations.

9   Once again, Your Honor, there is an awful lot going on

10  getting ready for trial in New Jersey and so forth.

11  And so once again I think it was completely without

12  intent and was oversight on the part of the defense,

13  but the Blake case had, in fact, been filed timely.

14        To put it in context, Ms -- I am sorry, Ms.

15  Hayes was filed timely.  Ms. Hayes died August of 2010

16  in the State of Alabama.  Alabama has a two-year

17  statute of limitations.  So, the statute would run in

18  August of 2012.  The claim was timely filed in the

19  Court of Common Pleas of Philadelphia County on January

20  12th of 2012.

21        So, consequently that claim was filed since

22  seven plus months before the statute ran.  So, again, I

23  think it was just a matter of oversight on their part.

24  But, collectively, Your Honor, this was very early in

25  the process.  It was an inadvertent error and mistake.

1   We would ask, as the plaintiffs' steering committee,

2   that we be allowed to correct that mistake and

3   substitute the Hayes case for the Blake case.   Thank

4   you.

5           THE COURT:  Thank you.  Ms. Jones?

6           MS. C. JONES:  May I be heard just briefly,

7   Your Honor?

8           THE COURT:  Yes.

9           MS. C. JONES:  Your Honor, we have responded

10   to this request and certainly understand Mr. Gaynor's

11   personal position and would not wish in any way to

12   affect that or to make it any worse.

13           In short, I think this is a matter within the

14   discretion of the Court.  We filed the objection in

15   large part for two reasons.  One, because the case

16   management order does not, in any way, provide for this

17   type of unilateral substitution.

18           In fact, it provides very clearly that either

19   if the case is settled or may be dismissed in the event

20   that it is first identified.  It was about five weeks

21   after it had actually been identified as a Bellwether

22   before we were advised of the mistake.

23           In any event, discovery will, to some extent,

24   be delayed if there is a substitution only in order to

25   get whatever medical records and so forth we may have

10

1   to get and follow up with the newly designated

2   plaintiff.

3           The real issue, Your Honor, is that going

4   forward that regard to what Your Honor decides to do

5   today in terms of the substitution, and I certainly

6   understand under the circumstances if the Court wishes

7   to allow the substitution, but going forward,

8   substitution at a later date is not something that is

9   contemplated by the case management order.

10          In fact, the case management order clearly

11  contemplates dismissal of the case in the event that

12  the plaintiffs choose not to go forward with it.  So,

13  as much as anything, Your Honor, we think it is

14  important that we not set a precedent here that allows

15  unilateral substitution, particularly after discovery

16  has been done.

17          THE COURT:  Right.  Okay.  I think that makes

18  sense.  We have three Bellwethers on the plaintiffs'

19  steering committee side?

20          MR. GAYNOR:  Yes, Your Honor.

21          THE COURT:  And two on the defense side?

22          MS. C. JONES:  Three.

23          THE COURT:  Okay.  And you have each

24  identified those three.  There has been no issue since

25  they've been identified?

1          MR. GAYNOR:  Correct.

2          THE COURT:  Okay.  All right.  Yes, I looked

3     at your papers.  It seems to me that we're early enough

4     in the process that there is no dramatic prejudice.  I

5     mean, there certainly is some prejudice in that there

6     have been efforts to identify documents.

7          You all have been working very diligently and

8     getting to these issues as you need to, so when the

9     Bellwether cases were identified you began the process

10    of identifying documents.

11         I don't think we've gone so far down that

12    road that there is prejudice through the substitution,

13    and I certainly think there are legitimate,

14    understandable reasons for the mistaken designation and

15    so I will allow the substitution with the understanding

16    that Ms. Jones' point is very well taken, that we want

17    to stay with these Bellwether cases and now that we're

18    in the process of discovery and I don't think there

19    really is a system here for the unilateral

20    substitution.

21         So, let's go forward then with the Estate of

22    Hayes case substituting for the Estate of Blake case.

23         MR. GAYNOR:  Thank you, Your Honor.

24         THE COURT:  All right.  And we will do an

25    order that confirms that.  Thank you for those

1   presentations.   Item number three is the request from

2   defendants for depositions of plaintiffs in Bellwether

3   matters.   Where are we with these?

4           MS. C. JONES:  Your Honor, I think that's

5   moot.  We now have all of those things.

6           THE COURT:  Okay.  Those have been worked

7   out.  Okay.  Thank you.

8           MS. C. JONES:  Yes, Your Honor.

9           THE COURT:  And number four, the MDL cases

10  subject to a dispositive motion, and that's based upon

11  the review of the plaintiff fact sheets.  Wants to talk

12  about that?

13          MS. C. JONES:  Your Honor, I am not sure

14  frankly it is ripe for action here.

15          THE COURT:  Okay.

16          MS. C. JONES:  It is more of an advisory type

17  of situation.

18          THE COURT:  Okay.

19          MS. C. JONES:  We have, in fact, advised

20  plaintiffs that based upon our review of the fact

21  sheets and the medical records before plaintiffs it

22  does not appear that there is a viable claim for one of

23  various reasons.

24          What we would like to do, the plaintiffs have

25  not yet responded to that, but our intent is to move

13

1   forward with dispositive motions on those matters, so

2   that we can then begin to limit and streamline this MDL

3   as to the cases that are and should be in front of it.

4           No doubt the plaintiffs may wish to -- they

5   may concede those issues or they may ultimately wish to

6   contest them.  We just wanted to advise the Court that

7   it is our intent to move forward with those motions.

8           THE COURT:  With those motions.  Okay.  It

9   seems to me that 80 motions for summary judgment or

10  motions to -- I guess they would be motions for summary

11  judgment at this point?

12          MS. C. JONES:  These would be motions for

13  summary judgment, but I think that we have identified

14  specifically four to move forward on.

15          THE COURT:  Right.  Okay.  And I am just

16  interested in saving some time and paper on your part

17  and ours.  I mean, I guess each case would be an

18  individual case, so you would have to brief it

19  individually.  Unless there is some -- I am

20  contemplating maybe a motion filed and then a response

21  from the plaintiff as to whether they really contest

22  that motion.

23          MS. C. JONES:  We would be happy to look at

24  that, Your Honor, and see if we can do something.  We

25  actually sent the letter to plaintiff's counsel first

1  as a courtesy hoping we might be able to work something

2  out, if they could look at them and then if it is

3  unnecessary to file the motion, we could have a

4  stipulation of dismissal or something.

5          THE COURT:  Okay.

6          MS. C. JONES:  And I think we have not yet

7  responded or plaintiffs have not moved forward to

8  moving on.  But, if the Court is amenable to us filing

9  a single motion we can be happy to do that.  The only

10 concern I have is that you have individual case numbers

11 and I am concerned about the record.

12         THE COURT:  Right.

13         MS. C. JONES:  So, we will look to see what

14 we can do to make it easier.

15         THE COURT:  Probably in those cases where

16 there is going to be a contested motion we should have

17 individual motions and at least, I mean, you can

18 incorporate certain sections of the brief in each, I

19 guess, but I think we should probably have separate

20 motions and briefings.  Okay.

21         MS. C. JONES:  Thank you, Your Honor.

22         THE COURT:  Thank you.  Mr. Berman?

23         MR. BERMAN:  Good morning, Your Honor.

24         THE COURT:  Good morning.

25         MR. BERMAN:  With respect to this issue, the

15

1   PSC and the plaintiffs would oppose embarking on some

2   process at this point of time that would permit the

3   defendants to begin filing dispositive motions.

4          Just to back up a bit, the letter that Ms.

5   Jones referred to was an April 7 letter which was sent

6   to us prior to the date on which we were to make our

7   Bellwether selections.

8          In the letter four plaintiffs were identified

9   and without any elaboration the letter stated we have

10  reviewed, meaning the defendants, records and indicate

11  at best these plaintiffs did not suffer an injury from

12  a Tylenol product.  Given the lack of connection to

13  these defendants we requested you voluntarily dismiss

14  these plaintiffs without delay.  So, there is no

15  substance in the letter to which we have not responded

16  and it preceded the date on which the Bellwether

17  selections were made.

18         Frankly, we thought that if the defendants

19  felt that there were strong reasons why these

20  plaintiffs should be dismissed they would have selected

21  these plaintiffs as their three choices, so that the

22  plaintiffs could then proceed through CMO-15, which

23  governs the Bellwether process.

24         The Bellwether process governs the

25  commencement of case specific discovery and the

16

1   depositions and the selection of -- acquiring of all of

2   the medical records, et cetera.

3          I mean, what we were confronted with the

4   April 7 letter was simply a request, please dismiss

5   these plaintiffs and no other explanation.  These

6   plaintiffs did not go through any core discovery and

7   now have not been selected to go through the core

8   discovery by the defendants as their Bellwether

9   plaintiffs.

10         The purpose of the Bellwether selection plan

11  and the core case specific discovery is to enable all

12  of the parties to develop a full record about the cases

13  that are selected, which in this case are six, so that

14  the parties and the Court will be better informed as to

15  the information about the various cases, whether

16  dispositive motions may be appropriate with respect to

17  those specific cases.

18         If you take in the abstract cases that are

19  not going through that discovery and a motion is going

20  to be filed, you know, actually the plaintiffs would be

21  responding with a Rule 56(f) affidavit that we haven't

22  even had any discovery in the cases, we haven't had

23  depositions.  They are not part of the core discovery

24  that is permitted by CMO-15.

25         If the suggestion is that the defendants have

17

1   80 cases of medical records and they now want to file

2   motions or dispositive motions on a great number of

3   those, it is going to be a distraction to the mode that

4   the Court has established for handling the Bellwether

5   cases.  We are going to be moving in different tracks

6   at the same time, which is completely contrary to all

7   cases that have adopted a Bellwether process.

8           So, we would encourage the Court not to open

9   sort of this pandora's box at this time and permit a

10  separate track of cases to proceed on a dispositive

11  motion basis where there is no mechanism for any of the

12  discovery.

13          We would also oppose opening the discovery to

14  those cases at this point where the Bellwether process

15  contemplated the work up of six cases fairly

16  extensively during the period of May 1, which is when

17  core discovery started through August 1, 2014, which is

18  I guess approximately four or five months and are six

19  cases involved which will involve not only the

20  depositions of the core witnesses, but the Bellwether

21  order does permit discovery and depositions of the

22  plaintiff, the spouse, two treating physicians or

23  healthcare providers per side.

24          So, if you take four or five depositions

25  times six plaintiffs we're looking at a minimal of 24

18

1    or 25 depositions occurring over the course of the

2    summer.

3            So, just in sum, the plaintiffs would oppose

4    any modification of the Bellwether order, CMO-15, to

5    permit some parallel track to work up cases.  We would

6    also oppose the filing of dispositive motions on a

7    scant record at this time.  Thank you, Your Honor.

8            THE COURT:  Yes.  Ms. Jones, I think Mr.

9    Berman has a good point, that we're talking about

10   dispositive motions on the basis of the fact sheets,

11   and I am just wondering what kinds of issues you would

12   identify on those fact sheets or in those medical

13   records that would lend themselves to dispositive

14   motions?

15           MS. C. JONES:  Well, I think first of all,

16   Your Honor, we did not write that letter lightly.  My

17   recollection is that there is a failure to show product

18   identification in some cases.  There is no

19   documentation of liver injury in some cases.

20           I mean I would have to go back and look at

21   more specifically the information, but if the

22   information that we have suggests that there is no

23   valid claim properly before this Court then certainly

24   we ought not to be forced to go through discovery on

25   those cases.

19

1          In fact, in all candor, I am not intending to

2    set up a separate track if you will but, in fact, when

3    Mr. Berman suggests we should have selected these as

4    Bellwether cases suggests to Your Honor that the whole

5    purpose of the Bellwether process is to select

6    plaintiffs who are representative, if you will, of all

7    of the plaintiffs.

8          THE COURT:  I agree with that.

9          MS. C. JONES:  -- and, therefore, we would

10   get information.  And where we've got four plaintiffs

11   that we don't believe have a valid claim, whether it is

12   because of the statute of limitations or something

13   else, most courts, most MDL courts would say it is not

14   appropriate to identify those plaintiffs as Bellwether

15   plaintiffs because they end up being dismissed after

16   great judicial expense and result in delay.

17         So, all I am suggesting is that in those

18   cases that for whatever reason we believe there is no

19   question of fact that has been demonstrated, and maybe

20   the way we can do it is to simply send a more detailed

21   letter and response to the plaintiffs that say these

22   are the facts on each one of these individual cases,

23   and if they, in fact, have something that would suggest

24   that we are wrong we don't file the motion.  But, I

25   don't think it is necessary at this point, and we

20

1   certainly were not contemplating in these cases

2   additional discovery would be necessary.

3           In fact, we wouldn't have asked them to

4   voluntarily dismiss the cases had we thought that was

5   necessary.

6           THE COURT:  Okay.  So, there are some cases,

7   then where with the limited information available to

8   you, these plaintiffs' fact sheets and some medical

9   records that you have either statute of limitations or

10  product identification or some other clear reason to

11  seek their dismissal?

12          MS. C. JONES:  That's correct, Your Honor.

13          THE COURT:  Okay.  All right.  What is gained

14  by doing that now and not waiting until later in the

15  case?

16          MS. C. JONES:  What is gained by doing that

17  now is that we then know or begin to identify what the

18  proper pool of plaintiffs is in this case, excuse me,

19  this MDL proceeding, and we begin to eliminate those

20  cases who are not properly before the Court.

21          THE COURT:  All right.  Okay.  Would it be --

22  just trying to think through this, but if you file such

23  a motion would it be a legitimate response from the PSC

24  that there is a need for additional discovery as to

25  this particular plaintiff, whoever that is?

21

1          MS. C. JONES:  Let me say this, Your Honor.

2     We anticipate that based upon the information that we

3     have there is no genuine issue of material fact.

4          THE COURT:  Okay.

5          MS. C. JONES:  So, there would be no reason

6     for the plaintiffs to say we need additional discovery.

7     If, in fact -- I mean these are the types of

8     information that you would have expected plaintiffs to

9     have at the time they filed the lawsuit.

10          If, in fact, they have information that we

11     don't have, if for example they have some information

12     that's --

13          THE COURT:  And that comes out in the

14     response.

15          MS. C. JONES:  It comes out in the response

16     or they just won't call us and say Christy, you know,

17     we've got right here in this piece of paper

18     documentation of product ID, I would be glad to send it

19     to you, then we won't file it.  That's not -- I am

20     not -- I don't want -- I don't want the Court to have

21     to go through anything unnecessarily --

22          THE COURT:  Right.

23          MS. C. JONES:  -- nor do I want -- you know,

24     if these are not ironclad cases and the plaintiffs

25     have, in fact, can say to us we have misunderstood or

22

1   we missed some fact or something then, you know, we're

2   happy either not to file the motion or to withdraw the

3   motion or to defer it pending additional discovery.

4           THE COURT:  Okay.  I think in theory I am

5   inclined to let that process go forward, to have you

6   seek dismissal of those cases where on the basis of the

7   plaintiff fact sheets and medical records you think

8   that there is no viable claim.

9           Maybe the thing to do is to, as you

10  suggested, send a more detailed letter with the reasons

11  that you would seek the dismissal of those plaintiffs

12  and see if you can get some agreement as to some of

13  them.

14          MS. C. JONES:  I would be happy to do that,

15  Your Honor.

16          THE COURT:  I think the goal of pairing down

17  the universe of plaintiffs is a good one.  I don't see

18  any reason to wait to do that.  Okay.

19          MS. C. JONES:  We would be happy to do that.

20          THE COURT:  All right.

21          MS. C. JONES:  Thank you, Your Honor.

22          THE COURT:  Thank you, Your Honor.

23          MR. BERMAN:  Your Honor, if I may just

24  respond one more time on the issue?  I understand your

25  ruling.  We do fear a slippery slope being created here

23

1    and requiring opening up discovery for all of these

2    cases.

3            Certainly if there are a very small selection

4    of cases that Ms. Jones has identified, that she feels

5    warrants this kind of relief we can take a look at

6    that.

7            But, we really do not want to waive that

8    right subject to CMO-15, nor any rights with respect to

9    opposing motions and requesting full discovery, and we

10   don't want to go on a slippery slope of having to

11   embark in extensive discovery to deal with these

12   motions if they're filed.

13           THE COURT:  Well, I don't hear that this is a

14   request for additional discovery on cases that the

15   defense has identified as --

16           MR. BERMAN:  It is not so much as their

17   request for discovery, it is what the plaintiffs would

18   have to do in terms of the discovery they would respond

19   with in order to oppose the motion.

20           THE COURT:  Right.

21           MR. BERMAN:  So, if the record is scant and

22   the plaintiffs need to develop a more elaborate record

23   in order to respond to the motion that becomes the

24   slippery slope and a dilution of effort and

25   concentration of how this has been established, Your

24

1    Honor.

2          Again, I do go back and I apologize for

3    saying this.  The original letter was very ambiguous in

4    saying that the plaintiff did not use or at best did

5    not suffer an injury.  And we don't even really know

6    what that means in terms of the request to dismiss the

7    four plaintiffs.

8          THE COURT:  Well, I think you are going to

9    get some clarification.

10         MR. BERMAN:  Yes, Your Honor.

11         THE COURT:  Okay.

12         (Pause in proceedings.)

13         THE COURT:  The next item on the agenda is

14   the status of the Wye (Ph) case.

15         MR. BERMAN:  Your Honor, if you recall, the

16   plaintiffs had represented Mr. Wye and the estate of

17   his daughter at a point in time and we had moved for

18   permission to withdraw as counsel, which the Court

19   granted.  That was by an order dated January 27, 2014,

20   filed in that specific case which was docket number

21   12-CV-7260 as document number 29.

22         Subsequent to that we offered to try to

23   facilitate a voluntary dismissal of the case for the

24   defendants.  Mr. Wye has not been cooperative, has not

25   responded to us.  It is one of the reasons why we have

25

1  requested permission to withdraw.

2          So, in terms of the ability for us to

3  facilitate that we have sort of reached the end of the

4  road.  We have contacted him about the possibility of

5  this case will be dismissed or a motion will be filed,

6  but we have not gotten any response and there is

7  nothing more that we're really able to do as best as we

8  have tried.

9          THE COURT:  Okay.  So, what do you suggest at

10  this point?

11          MR. BERMAN:  I think the defendants wanted

12  permission to file a formal motion to dismiss for

13  failing to provide a fact sheet or maybe on another

14  basis.  I am not sure.

15          We have tried to convey that to Mr. Wye and

16  told him the case is at risk of being dismissed by a

17  motion in lieu of doing it voluntarily, but we have no

18  cooperation from him and I would suggest that

19  defendants take what action they think is appropriate

20  under the circumstances.

21          THE COURT:  Okay.  So, you will file a

22  motion?

23          MR. JONES:  We would be happy to, Your Honor.

24          THE COURT:  Okay.  All right. Very good,

25  thank you.

26

1          (Pause in proceedings.)

2          THE COURT:  Item six is the plaintiffs'

3   steering committee's request for cross-noticing and

4   coordination with respect to expert's depositions.

5          MR. BERMAN:  Yes, Your Honor.  And I

6   apologize, do you prefer me to be at the podium?

7          THE COURT:  You're fine right there.

8          MR. BERMAN:  All right.  Thank you, very

9   much.  As Your Honor is aware, the New Jersey

10  litigation that is ongoing and the plaintiffs have

11  recently served expert reports in the New Jersey

12  litigation.

13          In connection with that we drafted a proposed

14  order in New Jersey whereby there would be certain

15  limits on the depositions that the defendants could

16  take of the generic experts, such that there would not

17  be a second deposition of the same expert on the same

18  issues on which he had been previously deposed and only

19  with respect to any new information that might occur

20  after the trial of the first case.

21          We desire to have some coordination with

22  respect to that in terms of the MDL.  What I mean by

23  that is if there is going to be a deposition in New

24  Jersey of the generic expert we would like it to be

25  cross-noticed for purposes of the MDL, so that that

27

1    same expert is not deposed a second time on the very

2    same report in the MDL when we reach the point of

3    expert disclosures in the MDL.

4            We haven't yet reached the point of a

5    proposed order for that in the MDL and an order has not

6    yet been entered in New Jersey with respect to these

7    issues.  As I said, there was a proposed order and we

8    have a red line that was returned to us by Ms. Jones.

9            We are going to work with her on the red line

10   for entry in New Jersey, but we wanted to bring to this

11   Court's attention the idea that we would also like to

12   have some coordination to cross-notice things, so we

13   would have the same protection for the experts and not

14   have them repeatedly deposed from the same report and

15   only on new information.

16           THE COURT:  Okay.  Ms. Jones?

17           MS. C. JONES:  I am not sure to what extent

18   we have a real disagreement.  Let me tell you what the

19   issue may be.

20           THE COURT:  Okay.

21           MS. C. JONES:  We certainly would agree that

22   experts who have been cross-examined on a particular

23   subject ought not to be recross-examined on that same

24   subject and we are certainly willing to work with

25   plaintiffs' counsel on that.

28

1          The issue that is before or that is causing

2     us some problems is that in the case that is set for

3     trial in New Jersey it involves a 14 year old with very

4     specific issues.  The generic reports of these experts

5     address issues far beyond that relevant to that

6     individual plaintiff.

7          It is unlikely that those experts will be

8     cross-examined on all of the opinions set forth in

9     their report, because they're simply not relevant to

10    the issues before the court in New Jersey at this time.

11         And because we are faced with an early trial

12    setting it obviously is important to restrict that

13    cross-examination of those experts at their deposition

14    to the issues before the Court.

15         THE COURT:  Right.

16         MS. C. JONES:  So, to the extent that we

17    address certain issues in those expert depositions, and

18    I am sure the plaintiffs would agree as to ours,

19    generically we don't have any intent to go back and

20    recover plowed ground.

21         On the other hand, if for example there are

22    issues that are not relevant in the New Jersey case,

23    such as alcohol for example, or certain labels for

24    example. then if those issues are important in the

25    subsequent MDL cases we would anticipate being able to

29

1   cross-examine the expert witnesses on those issues.

2   Not to redo what has been done before.

3             THE COURT:  Right.

4             MS. C. JONES:  But, not to be foreclosed from

5   taking another deposition on the pertinent issues.  I

6   think that's the only real issue that we have.

7             THE COURT:  Is there one plaintiff going

8   forward in New Jersey?

9             MS. C. JONES:  Just one plaintiff.

10            THE COURT:  And that's a 14 year old?

11            MS. C. JONES:  Yes, Your Honor.

12            THE COURT:  Okay.  All right.  I see your

13  point.  I think what we would want to avoid here is

14  some duplication in the depositions.

15            MS. C. JONES:  I understand that.  And we're

16  certainly in agreement with that on both sides, but

17  what I think is while we may -- while we agree that we

18  would be foreclosed from recovering the same ground,

19  the fact is that some of their reports address issues

20  that are simply irrelevant in this case, and I don't

21  want to be foreclosed and I am sure plaintiffs don't

22  want to be foreclosed from redeposing our experts as to

23  issues that are not explored in the New Jersey

24  litigation.

25            THE COURT:  All right.

30

1        MS. C. JONES:  Or that may be more relevant

2  to whatever the Bellwether cases are before this Court.

3        THE COURT:  Okay.  I think under those

4  circumstances it is hard to fashion a rule today as to

5  how far you can go in a deposition of an expert

6  somewhere down the road in this case on the basis of

7  what happened in the New Jersey litigation this summer.

8  Right?  Mr. Berman?

9        MR. BERMAN:  Yes.  There have been orders

10  addressing this issue in other MDLs, and I have for

11  example, but it has not yet been shared with Ms. Jones,

12  an order that was entered in the <u>Gatalitti</u> (ph), where

13  Judge Polster (ph) crafted an accommodation for

14  redeposing experts who had already been deposed and

15  with limitations on only as to new opinions that are

16  offered and requiring a new written report that may be

17  offered to express the new opinions.

18        I guess the concern that we have here is that

19  with the immediacy of the New Jersey case coming to

20  trial we have just provided the dates for the experts

21  to be deposed.

22        And for example, one expert is scheduled to

23  be deposed towards the end of this week and there will

24  be other experts who will be discussed next week and

25  then the following week.

1        And we wanted to get on the table that those

2   reports, to the extent they are generic reports, not

3   the case specific reports, that those generic reports

4   are broad reports and the defendants, when they depose

5   those experts on the generic issues, they should not

6   have an opportunity to go back and redepose on the same

7   generic issues at a later date if there is no update to

8   the reports.

9        THE COURT:  Can you give me an example of a

10  generic issue, what you're talking about?

11       MR. BERMAN:  The question of the dose of

12  which acetaminophen causes acute liver failure.  If an

13  expert expresses an opinion, a certain gram dosage and

14  that is in their generic report, there is an

15  opportunity to depose, it is clearly on paper in that

16  report that the defendant can question the expert about

17  that opinion.

18       Why should the expert be subject to another

19  deposition later on if he never changes his opinion via

20  a subsequent or updated report.

21       THE COURT:  All right.

22       MR. BERMAN:  I mean, there is generic issues

23  relating to the adequacy of the labeling, the language

24  of the warning, the type of marketing that was done.

25  All of these have been expressed thus far in generic

32

1    reports by the plaintiffs and those reports have four

2    corners to them and the experts shouldn't be deposed a

3    second time with the four corner report.

4            THE COURT:  What is the product involved in

5    the New Jersey case?

6            MR. BERMAN:  I believe it is a Tylenol Extra

7    Strength product, Your Honor, the Tylenol Extra

8    Strength, the 500 milligram.

9            THE COURT:  Okay.

10           MR. BERMAN:  But, if I may say, the reports

11   do not necessarily confine themselves to discussing

12   only Tylenol Extra Strength.  They do talk more broadly

13   about other kinds of Tylenol products.

14           MS. C. JONES:  And therein lies the issue,

15   Your Honor, because these reports deal with issues that

16   are not at issue in the Lyles (ph) case in New Jersey.

17           THE COURT:  Right.

18           MS. C. JONES:  For example, they deal with

19   alcohol or they deal with labels other than the one

20   that is applicable there.  There is no reason at this

21   point in time for us to cross-examine the witnesses on

22   all of those extraneous opinions here.

23           THE COURT:  It seems to me if we look towards

24   some, you know, you ask it now or you are precluded

25   from asking it later or you take the deposition now and

33

1   you are precluded from asking questions, generic

2   questions of the expert later, that you're really

3   promoting a very long deposition of an expert in a case

4   involving one plaintiff and one product, right?

5        I mean, it seems to me that that forces the

6   defendant to expand the scope of the deposition beyond

7   what they really need for this trial.

8        MR. BERMAN:  Well, the reports again, as I

9   said, have four corners to them, Your Honor, and the

10  witnesses, the expert witnesses may testify, as I

11  understand them, under New Jersey law, to what's in

12  their reports.

13       And, you know, they may be subject to a

14  relevancy objection at the time of trial, but the

15  reports are written to be the generic reports to be

16  utilized not only in that one case, but any subsequent

17  cases that may be tried in New Jersey as well as in the

18  MDL.  And with the time constraint of preparing those

19  reports for the New Jersey trial they've had to

20  necessarily be comprehensive.

21       THE COURT:  What has Judge Higbee done with

22  the possible use of the depositions for the upcoming

23  trial in relation to other pending New Jersey cases?

24       MR. BERMAN:  I don't believe she has actually

25  addressed that yet, Your Honor.  And Mr. Buchanan, who

34

1  cannot speak right now, may be able to shed light when

2  we open the line later.  But, I don't believe she has

3  addressed that.

4       MS. C. JONES:  She has not addressed that,

5  Your Honor.  Frankly, if the plaintiffs' position is as

6  just stated, you're right, the depositions will be much

7  longer.  It is unlikely that sufficient time has been

8  set aside for those depositions today and it is

9  unlikely that we will be able to finish those in time

10 for the July trial.

11       So, that is a matter that would have to be

12 raised with the Court if that is going to be their

13 position.

14       THE COURT:  Right.  I mean, I think what

15 you're asking me to do is allow cross-noticing of the

16 depositions in New Jersey for this case, right?

17       MR. BERMAN:  Yes, Your Honor.

18       THE COURT:  Okay.  And if we do that, then I

19 think I am really expanding the scope of the deposition

20 taken in the New Jersey case for use in this case some

21 time later, and I think that intrudes a bit on the New

22 Jersey litigation.

23       But, I am not inclined to allow the

24 cross-noticing.  Well, maybe I am using the wrong

25 terminology.  I certainly think going back to where we

1    were ten minutes ago, I think if ground is covered in

2    the New Jersey case adequately it ought not to be gone

3    into again a year or two or three from now in this

4    case.   Right?

5          MR. BERMAN:  Well, I think that is one

6    concern we don't believe that there should be a

7    redeposition of the same questions and issues that are

8    adequately --

9          THE COURT:  I don't think Ms. Jones is

10   disagreeing with that.

11         MS. C. JONES:  I agree with that, Your Honor.

12         THE COURT:  Okay.

13         MS. C. JONES:  It is just that if, for

14   example, we don't cover certain issues that aren't

15   relevant to the New Jersey case I don't want to be

16   foreclosed about coming back and cross-examining the

17   witness on that later where they are relevant to the

18   MDL case.

19         THE COURT:  Right.  I agree with that.  So, I

20   think you can cross-notice them to the extent that what

21   is gone into in the New Jersey deposition can be used

22   in this case, but I don't think that limits the scope

23   of what they can ask later on of the same expert in

24   this case.

25         Okay.  I think that is just something we will

1  have to take up at a later time.  Really, if there is

2  an expert that is going to be deposed in this case who

3  was deposed in the New Jersey case, then we have to

4  talk about the scope of that deposition if you can't

5  agree to it.

6         MS. SHERRY:  Your Honor, Madeline Sherry

7  for --

8         THE COURT:  Yes?

9         MS. SHERRY:  May I be heard on this issue?

10        THE COURT:  Sure.

11        MS. SHERRY:  We're not a party to the

12  litigation in New Jersey.  We haven't been served with

13  any of the expert reports.  We haven't seen the notice

14  of deposition.  We're not planning to participate.  We

15  would like to preserve our rights with respect to the

16  MDL and be given the opportunity to cross-examine these

17  generic experts if and when the time comes for the

18  cases in which we're involved.

19        THE COURT:  Okay.  I think that makes sense.

20        MR. GOODMAN:  Your Honor, Brandon Goodman for

21  Paragon.  Paragon joins fully in the position expressed

22  by Ms. Sherry on behalf of --

23        THE COURT:  Okay.  Thank you.  I think that

24  takes care of all of the items except for item one.

25  This is the agenda item whose name shall not be

1   mentioned.  So, we have to adjust the set here and

2   invite our side table counsel to leave.  Thank you very

3   much for being here.

4           ALL:  Thank you, Your Honor.

5           THE COURT:  And are we terminating this call

6   and then recalling back, to be redundant.

7           MR. BERMAN:  Yes, Your Honor.  I think the

8   process we established was to terminate this call and

9   we provided a new call in number that will permit Mr.

10  Buchanan and Mr. Weinkowitz to be able to participate

11  through the telephone.

12          THE COURT:  Okay.

13          MR. BERMAN:  They would be the only two

14  people participating.

15          THE COURT:  Okay.  So, let's terminate this

16  call and we will get them back on the line.  Thank you.

17  Do we need a five minute break, folks, do you want to

18  take a break?  We can do that.

19          MS. C. JONES:  I don't think this -- I don't

20  think our hearing itself will take more than ten

21  minutes.

22          THE COURT:  Okay.  Stay put then.

23          (The sealed and impounded portion of the

24  transcript was not requested to be transcribed.)

25          (The proceedings concluded at 11:06 a.m.)

1

2

3

4

5

6                                CERTIFICATION

7

8          I, Brad Anders, do hereby certify that the

9   foregoing is a true and correct transcript from the

10  electronic sound recordings of the proceedings in the

11  above-captioned matter.

12

13

14   9 - 19 - 14

15  Date                                Brad Anders

16

17

18

19

20

21

22

23

24

25